UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JEREMY S. DERBY, GUARDIAN FOR CHRISTINE L. DERBY | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| | ) JURY TRIAL DEMANDED |
| DARTMOUTH-HITCHCOCK MEDICAL CENTER, MARY HITCHCOCK MEMORIAL HOSPITAL, and THE DARTMOUTH-HITCHCOCK CLINIC, | ) ) ) ) ) |
| Defendants. | ) ) ) |

# COMPLAINT AND JURY DEMAND

## Introduction

As a result of the Defendants' collective and individual negligent failures to diagnose, treat, and monitor the condition of Christine L. Derby including their failures to follow their own documented treatment plan, she developed and now suffers central pontine myelinolysis, a form of permanent brain damage.

## Parties

1. Plaintiff Jeremy S. Derby is a resident of Vermont. He is the son of Christine L. Derby ("Christine"), also a resident of Vermont, and was appointed her Guardian by the Vermont Superior Court, Probate Division, Windham Unit in the case under docket number 293-6-16 Wmpr by Order dated October 19, 2016.

2. Defendant Dartmouth-Hitchcock Medical Center ("DHMC") is a New Hampshire non-profit corporation with a principal place of business at One Medical Center Drive, Lebanon, New Hampshire 03756.

3. Defendant Dartmouth-Hitchcock Clinic ("DHC") is a New Hampshire non-profit corporation with a principal place of business at One Medical Center Drive, Lebanon, New Hampshire 03756.

4. Defendant Mary Hitchcock Memorial Hospital ("MHMH") is a New Hampshire non-profit corporation with a principal place of business at One Medical Center Drive, Lebanon, New Hampshire 03756.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because it is a suit between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over DHMC, DHC, and MHMH because they are New Hampshire corporations with principal places of business in Lebanon, New Hampshire.

7. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400.

## Allegations Common to All Counts

### Defendants' Negligent Medical Care

8. At all material times, DHMC, DHC, and MHMH (collectively, the "Corporate Defendants") held themselves out as providing competent care in fields of physician, nursing, rehabilitation, therapy and other medical professional disciplines offered at the facility known as Dartmouth Hitchcock Medical Center at One Medical Drive, Lebanon, New Hampshire (the "Medical Center").

9.     On or about May 22, 2016, Christine came under the care of the Corporate Defendants when she was transferred to the Medical Center from Springfield Hospital for the management of severe hyponatremia.

10.     Hyponatremia is condition of low sodium in the blood.  A basic metabolic panel ("BMP") is a blood test for measuring various blood values, including sodium.

11.     Upon acceptance of Christine's admission from Springfield Hospital, Dr. Laura M. Chiang as the attending physician and Dr. Ryan L. Wilson as a medical resident at the Medical Center conducted a "Critical Care Admission & Physical" and noted that Christine was suffering "[s]evere hyponatremia, likely chronic greater than 48 hours."

12.     The correction of hyponatremia requires careful correction with serial monitoring to ensure that the sodium level does not elevate too quickly as that can cause severe damage of the myelin sheath of nerve cells in the brainstem, which is the condition known as osmotic demyelination syndrome or central pontine demyelination.

13.     Drs. Chiang and Wilson set forth the treatment plan for correction of the hyponatremia as:

> … status/post <u>3% saline infusion</u> from outside hospital; <u>continue here</u>
>
> Follow <u>every 4 hours [with] basic metabolic panel, correct [sodium] no more than 9 millimole per litre in 24 hours</u>

(Emphasis added and abbreviations spelled out).  Thus, the treatment plan was to:

1) Continue the administration of "3% saline infusion" to elevate the sodium level;

2) Serially monitor the sodium level every four hours with BMPs; and

3) **"[C]orrect [sodium] no more than 9 millimole per litre in 24 hours."** (emphasis added) (collectively, the "DHMC Plan"). The mandate that the sodium increase "no more than 9 millimole per litre in 24 hours" was critical for the protection of Christine from avoidable brain damage.

14. Dr. Sijun Kim ordered serial BMPs to monitor sodium blood values. Blood was collected and sent to the lab for assessment every four to five hours.

15. In addition to Drs. Chiang, Wilson, and Kim, Christine came under the care of Drs. Jose R. Mercado, Richie K. Huynh, Ko K. Maung, Harold L. Manning, Mark N. Franklin, Dana L. Kerr. All were express, implied, or apparent agents and employees of the Corporate Defendants.

16. The BMPs ordered by Dr. Kim documented the following changes in the sodium blood level:

| Date | Time | Sodium | Cumulative Time Change | Cumulative Sodium Change |
|---|---|---|---|---|
| 5/22 | 6:00 p.m. | 106 | | |
| 5/22 | 10:30 p.m. | 107 | 4:30 | 1 |
| 5/23 | 2:00 a.m. | 109 | 8:00 | 3 |
| 5/23 | 6:20 a.m. | 113 | 12:20 | 7 |
| 5/23 | 11:00 a.m. | 118 | 17:00 | 12 |
| 5/23 | 12:10 p.m. | 125 | 18:10 | 19 |

Thus, by 6:20 a.m. on May 23, 2016, the sodium level had risen by 7 millimole per litre in just 12 hours and 20 minutes, a dangerous warning that the DHMC Plan maximum of "no more than 9 millimole per litre in 24 hours" would be quickly exceeded. Incredibly, nothing was done to protect Christine from the risks of further rapid rise of her blood sodium level and by 11:00 a.m. the sodium had risen by 12 millimole per litre in 17 hours, exceeding by 3 the maximum of 9 under the DHMC Plan for 24 hours. Again, incredibly, nothing was done to protect Christine

4

and the cumulative sodium change skyrocketed to 19 over 18 hours and 10 minutes, more than double the DHMC Plan's maximum of 9 millimole per litre in 24 hours.

17. Corporate Defendants through their agents and employees negligently failed to comply with the DHMC Plan. While fluids were administered and serial BMPs were conducted, the Defendants disregarded the mandate to limit the increase of sodium to "no more than 9 millimole per litre in 24 hours"

18. The excessively rapid uptake of sodium in the blood contrary to the DHMC Plan foreseeably caused permanent damage of the myelin sheath of nerve cells in Christine's brainstem creating the condition known as osmotic demyelination syndrome and central pontine demyelination.

19. The Defendants through their actual, implied, and apparent agents and employees failed to exercise reasonable care in their diagnosis, care, and treatment of Christine, including, but not limited to negligent failures to:

   a. Establish and communicate appropriate treatment guidelines and protocols for the management and treatment of hyponatremia and other conditions suffered by Christine;

   b. Manage Christine's treatment for hyponatremia and other conditions;

   c. Monitor and respond to changes in her condition;

   d. Communicate important clinical and other information among the care providers;

   e. Adjust her treatment in response to her reported sodium blood levels and other condition changes;

   f. Protect her from risk of complications, including brain damage; and

g.  Otherwise provide her appropriate care, diagnosis, and treatment.

(Collectively, the "Negligent Acts.")

### Christine's Damages

20. As a proximate result of the Negligent Acts, Christine suffered debilitating permanent brain damage, has suffered and will continue to suffer physical and emotional pain and suffering, and loss of enjoyment of life and she and her guardianship estate have incurred and will continue to incur costs for medical care and treatment, rehabilitation, and other expenses, lost wages and loss of earning capacity, and such other losses and injuries compensable under applicable law (collectively, the "Damages").

### Defendants' Failure to Provide Medical Records

21. DHMC is licensed under N.H. Rev. Stat. Ann. 151:2 and a "facility" subject to the Patients' Bill of Rights under N.H. Rev. Stat. Ann. 151:19 - 21.

22. MHMH is licensed under N.H. Rev. Stat. Ann. 151:2 and a "facility" subject to the Patients' Bill of Rights under N.H. Rev. Stat. Ann. 151:19 – 21

23. Under N.H. Rev. Stat. Ann. 151:21, X, Christine owns the information contained in her medical records and is entitled to a copy of such records upon request.

24. Undersigned originally attempted to obtain copies of Christine's medical records from the Defendants with a request dated November 3, 2016.

25. The medical records department advised undersigned's secretary on or about February 7, 2017 that they had no record of receiving the original request and a supplemental request was sent that day.

26. Undersigned's secretary has had several further telephone discussions with the medical records department and was advised on March 24 that the turnaround time for

production of the file had been extended for "legal reasons" from 30 to 60 days and the file might be produced by April 9, 2017.

27. The Defendants' failure to promptly and fully provide the requested records is a violation of Christine's rights under the Patients' Bill of Rights.

28. So-called "tort reform" bills are pending in Congress which, if passed and signed into law, would greatly impair the rights of Christine and her Guardian to recover for her injuries.

29. Thankfully, the Guardian obtained what is believed to be only a partial set of records before the engagement of counsel. This case is being brought based on the evaluation of the information of these records, which may not be complete.

## COUNT I

(Negligence)

30. All the preceding allegations are incorporated herein as if fully set forth.

31. The Defendants through their agents and employees within the scope of their agencies and employments committed the Negligent Acts proximately causing the Damages.

## COUNT II

(Violation of the Patients' Bill of Rights)

32. All the preceding allegations are incorporated herein as if fully set forth.

33. Defendants DHMC and MHMH have violated the rights of Christine to a copy of her medical record upon request as set forth in N.H. Rev. Stat. Ann. 151:21, X of the Patients' Bill of Rights.

34. Now that suit has been filed, the Defendants presumably will forthwith produce a complete copy of the records. If not, request is made that the Court order that the records be

produced pursuant to N.H. Rev. Stat. Ann. 151:30, I which empowers this Court to grant equitable relief to enforce rights under the statute.

35. Plaintiff is further entitled to an award of damages for all damages sustained on account of the violation of the Patients' Bill of Rights, but no less than $50 per day of violation, N.H. Rev. Stat. Ann. 151:30, II.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment as follows:

A. Award Plaintiffs compensatory damages, enhanced compensatory damages, and attorneys' fees, costs and expenses under each count of this Complaint, in an amount to be determined at time of trial, together with pre-judgment and post-judgment interest accrued thereon; and

B. Award such other and further relief this Court shall deem just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

Respectfully submitted,

JEREMY S. DERBY, GUARDIAN FOR
CHRISTINE L. DERBY

By his Attorneys,

McLANE MIDDLETON,
 PROFESSIONAL ASSOCIATION

Date: April 7, 2017      By: /s/ Henry R. Klementowicz
                          Ralph F. Holmes, NH Bar No. 1185
                          Henry R. Klementowicz, NH Bar No. 21177
                          900 Elm Street, P.O. Box 326
                          Manchester, New Hampshire 03105
                          Telephone (603) 625-6464
                          ralph.holmes@mclane.com
                          henry.klementowicz@mclane.com

12052955